THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                  : CRIM. NO. 3:15-CR-246
v.                                : (JUDGE MARIANI)
                                  :
ELVIN DELGADO,                    :
                                  :
Defendant                         :

## MEMORANDUM OPINION

Defendant Elvin Delgado's "Joint Motion Seeking Reduction of Sentence Based Upon Section 404 of the First Step Act of 2018; and, or, the Alternative Motion for Compassionate Release as Modified by the FSA of 2018, Based Upon 'Extraordinary or Compelling Circumstances', Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (Doc. 877) is pending before the Court. Defendant seeks relief from the sentence imposed on February 4, 2019, by former United States District Judge John E. Jones.[1] (Doc. 742.) Defendant was sentenced to 188 months on Count 1 of the Superseding Indictment which charged him with Criminal Conspiracy to Distribute PWID Cocaine and Cocaine Base. (Doc. 197 at 1-4; Doc. 742 at 3.) The amount of cocaine hydrochloride and cocaine base attributable to Defendant Delgado and other co-conspirators reasonably foreseeable to him was "[f]ive kilograms and more of cocaine hydrochloride and 280 grams or more of cocaine base aka 'crack' cocaine." (Doc. 197 at 3.) Defendant was also sentenced to 188 months on Count 9 of the

---

[1] The case was reassigned to the undersigned on August 23, 2022.

Superseding Indictment which charged him with Conspiracy to Commit Money Laundering. (Doc. 197 at 12; Doc. 742 at 3.) The sentences on Counts 1 and 9 were to run concurrently with each other.[2]

## I. ANALYSIS

### A. Section 404 of the First Step Act

The First Step Act of 2018 provided that the 2010 Fair Sentencing Act which lowered crack-cocaine sentencing ranges *prospectively* (for crack-cocaine offenders who were sentenced on or after the Act's effective date of August 3, 2010) would also apply *retroactively* to offenders who were sentenced before August 3, 2010. *Concepcion v. United States*, 142 S. Ct. 2389, 2392, 2396 (2022). "The First Step Act authorizes district courts to reduce the prison sentences of defendants convicted of certain offenses involving crack cocaine. The Act allows a district court to impose a reduced sentence 'as if' the revised penalties for crack cocaine enacted in the Fair Sentencing Act of 2010 were in effect at the time the offense was committed." *Id.* at 2396.

Defendant cannot seek a sentence reduction under Section 404 of the First Step Act because he was sentenced *after* 2010. Therefore, he was sentenced under the lowered crack-cocaine sentencing ranges provided for in the 2010 Fair Sentencing Act.

---

[2] The sentences were to run consecutive to the state parole revocations imposed at Lancaster County Docket Numbers 2898-1995 and 3744-2006. (Doc. 642 at 3.)

B. <u>Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)</u>

Defendant states that he seeks compassionate release based on the extraordinary and compelling circumstance that his minor child's mother is incapacitated due to psychosis and incarceration. (Doc. 877 at 7.)

Congress did not define the term "extraordinary and compelling reasons," but instead directed the Sentencing Commission to define the term. *See* 28 U.S.C. § 994(t) (providing that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined that term in § 1B1.13 Application Note 1 but has not updated its Policy Statement since the passage of the First Step Act which, in addition to the Director of the Bureau of Prisons, includes the ability of a prisoner to initiate a request for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See, e.g., United States v. Andrews*, 12 F.4th 255, 257-261 (3d Cir. 2021). In *Andrews*, the Circuit Court found that, where a prisoner brings a motion pursuant to 18 U.S.C. § 3582(c)(1)(A), the District Court is not bound by the Commission's policy statement. *Andrews*, 12 F.5th at 259. Rather, although the policy statement is not binding on prisoner-initiated motions, the policy statement "still sheds light on the meaning of extraordinary and compelling reasons [and] it was reasonable for the court to conclude that the phrase largely retained the

meaning it had under the previous version of the statute." *Id.* (citing *United States v. Johnman*, 948 F.3d 612, 619 (3d Cir. 2020)).

Relevant USSG guidance provides that family circumstances satisfy the extraordinary and compelling requirement based on "(i) the death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG 1B1.13 cmt. n.1(C)).

The Court finds that the guidance provided by the policy statement is instructive. Although Defendant presents a very unfortunate series of events (Doc. 877 at 8-10), he stated in his FCI McKean filing that his minor daughter, Gisela Delgado, had been living with his mother for the previous year and a half due to the incarceration of his common law wife, Maria Quinones (*id.* at 13-14).[3] Defendant also stated that his mother, age seventy-two, suffered from numerous chronic medical issues, and he identified extensive family support, including the support of his new wife, his brothers, his parents, and his in-laws. (*Id.* at 14.)

BOP Program Statement 5050.50 is also relevant to the Court's consideration of the issue presented in that it addresses requests for compassionate release based on the death or incapacitation of the family member caregiver, including what is meant by

---

[3] In the document presented to the warden at FCI McKean on June 12, 2022, Defendant twice states that his daughter Gisela is twelve years old. (Doc. 877 at 13, 14.) In his August 23, 2022, filing in this Court, he states that Gisela is "age sixteen." (Doc. 877 at 8.)

4

"incapacitation." https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited July 13, 2023).

> The criteria for a RIS request may include the death or incapacitation of the family member caregiver of an inmate's child, e.g., RIS requests from inmates whose biological or legally adopted child or children ("child") are suddenly without a family member caregiver due to that caregiver's death or incapacitation.
>
> For these requests, "child" means a person under the age of 18 and "incapacitation" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child.
>
> In reviewing these requests, BOP should assess, based on the information provided, whether release of the inmate to care for the inmate's child is in the best interest of the child.

(*Id.* at 7.) In Defendant's situation, the family caregiver was his mother at the time he made the request, and, therefore, in the USSG Policy Statement and BOP Program Statement contexts, his mother's incapacitation, not that of Gisela's mother, is at issue.

Though, like USSG policy statements, BOP Program Statements are not binding on the determination of what is an extraordinary and compelling circumstance under § 3582(c)(1)(A), courts have looked to BOP Program Statement 5050.50 for guidance as to what constitutes incapacitation and the showing a defendant must make to establish that he is the sole available caregiver. *See, e.g., United States v. Rensing*, Crim. No. 12-663, 2022 WL 1591163, at *3 (D.N.J. May 19, 2022). Where the motion for compassionate release is based on a claim that the defendant is the sole person available to provide care for the minor child,

5

> a defendant typically must establish that all other potential caregivers for their minor child are incapacitated. *United States v. Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *6 (E.D. Pa. Oct. 9, 2020) (Slomsky, J.). To prove incapacitation, a defendant must establish a person is "completely disabled" or unable to "carry on any self-care and [are] totally confined to a chair or bed." *Id.* at *7. Moreover, it is not enough to show a potential caregiver is merely "inconvenienced" by the childcare or "somewhat sick." *United States v. Seals*, 509 F.Supp.3d 259, 263 (E.D. Pa. 2020) (McHugh, J.) ("Where relief has been denied, it is typically where a caregiver is inconvenienced by the defendant's incarceration, or is somewhat sick, but not incapacitated."); *Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *7 (finding, in connection with the consideration of a motion for compassionate release, that a defendant's wife was not incapacitated from caring for the couple's son despite being diagnosed with both breast cancer and diabetes).

*United States v. Rooks*, No. 21-CR-038, 2022 WL 267899, at *6 (E.D. Pa. Jan. 28, 2022), *aff'd*, No. 22-1332, 2022 WL 2964805 (3d Cir. July 27, 2022).

Here, Defendant merely states in conclusory terms that, "other than precarious, temporary caregiving by chronically morbid and indigent grandmother, movant . . . remains the only available alternative caregiver." (Doc. 877 at 7.) Considering USSG and BOP guidance as well as relevant case law, the Court concludes that the information provided does not satisfy Defendant's burden of showing that he is the sole available caregiver for his daughter Gisela. Defendant recognizes that he is an alternative caregiver but does not establish that his mother, the current caregiver, is incapacitated as that term has been defined in the guidance cited above. Nor does Defendant show why the numerous additional identified supportive individuals are not available alternative caregivers.

6

Based on the foregoing, the Court concludes that Defendant has not shown an extraordinary and compelling reason to grant the relief requested on the grounds set forth in his pending motion.[4]

In recent filings, Defendant identifies his cancer diagnosis as an additional reason why the Court should grant him compassionate release. (*See* Doc. 904 at 2; Doc. 915 at 1.) The Government acknowledges that Defendant has exhausted his administrative remedies regarding the claims made in his original filing but asserts that the claims of cancer were not part of his original submission to the warden at FCI McKean where he was incarcerated when he filed the pending motion and his unexhausted claims should be presented to the warden of his current place of incarceration. (Doc. 910 at 6-7.)

Defendant is now incarcerated at Butner FMC with a projected release date of March 19, 2032. https://www.bop.gov/inmateloc/ (last visited July 13, 2023). District courts are mixed on whether transfer to another facility after having met the exhaustion requirement

---

[4] In his Section 404 argument, Defendant seeks relief based on his allegation that one of his career offender predicate offenses was "Conspiracy to Possess with Intent to Distribute a Controlled Substance" which is no longer considered a controlled substance offense for career offender purposes pursuant to *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021), and *United States v. Cabrera*, No. 19-3780, 2021 WL 3179406 (3d Cir. July 28, 2021). (Doc. 877 at 4-5.) Considering this argument in the compassionate release context, a non-retroactive change in the law which could have impacted the defendant's sentence if it had been in effect at the time of sentencing does not constitute an extraordinary and compelling reason for relief pursuant to 18 U.S.C. § 3582(c)(1)(A). *United States v. Andrews*, 12 F.4th 255 261-62 (3d Cir. 2021) (holding that non-retroactive change in law "did not create an extraordinary and compelling reason for early release" but "the current sentencing landscape may be a legitimate consideration for courts at the next step of the analysis when they weigh the § 3553(a) factors"). Having found no extraordinary and compelling reason for early release, the Court does not reach the second step of the analysis regarding § 3553(a) factors.

requires an application to the warden of the new facility. *See, e.g., United States v. Caro*, Crim. No. 18-152, 2023 WL 3092049, at *1 (D.N.J. April 26, 2023) (new exhaustion ordered); *United States v. Arthur*, 2:18-cr-188-2, 2:20-cr-73-1, 2022 WL 796752, at *2 n.1 (W.D. Pa. Mar. 16, 2022) (citing *United States v. Davidson*, 2:16-CR-00139, 2020 WL 4877255, at *7 (W.D. Pa. Aug. 20, 2020)) (transfer did not negate defendant's previous satisfaction of exhaustion requirement). In the circumstances presented here, i.e., a cancer diagnosis with divergent reports on Defendant's condition and prognosis (*see* Docs. 904, 915), and specific statutory provisions, BOP program statements, and USSG guidance potentially relevant to Defendant's situation (*see, e.g.*, 18 U.S.C. § 3582(d), BOP Program Statement 5050.50, and USSG § 1B1.13, cmt. n.1(A)), the Court concludes that exhaustion of the new medical reasons raised should first be presented to the warden at Butner FMC.[5] This conclusion is bolstered by the fact that Defendant asserted that FCI McKean was not equipped to give him the proper care and needed treatment for his cancer as a basis for the relief requested (Doc. 904 at 2) but he has since been transferred to Butner FMC which provides extensive medical services to the inmate population, *see* https://www.bop.gov/locations/institutions/buh/buh_ao-handbook.pdf?v+1.0.0 (last visited July 13, 2023).

---

[5] Should Defendant file another motion for compassionate release following exhaustion of administrative remedies regarding his medical condition, the Court will again consider whether Defendant presents an extraordinary and compelling reason for sentence reduction, and if so, whether the 3553(a) factors (including changes in the sentencing landscape) warrant relief.

## II. CONCLUSION

For the reasons set forth above, the Court will deny Defendant's "Joint Motion Seeking Reduction of Sentence Based Upon Section 404 of the First Step Act of 2018; and, or, the Alternative Motion for Compassionate Release as Modified by the FSA of 2018, Based Upon 'Extraordinary or Compelling Circumstances', Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (Doc. 877). Based on the determination that Defendant must exhaust his medical claim, his request for appointment of counsel to assist him with the claim contained in his April 25, 2023, filing (*see* Doc. 904 at 3) will be denied. A separate Order will be entered.

_____
Robert D. Mariani
United States District Judge